# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 19, 2023

Lyle W. Cayce
Clerk

No. 21-40578

Providence Title Company,

*Plaintiff—Appellee/Cross-Appellant*,

*versus*

Tracie L. Fleming,

*Defendant—Appellant/Cross-Appellee*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:21-CV-147

Before King, Duncan, and Engelhardt, *Circuit Judges*.

Per Curiam:*

Defendant-Appellant/Cross-Appellee Tracie Fleming appeals the district court's July 1, 2021 preliminary injunction order, which prohibits her from employment in any capacity by Truly Title, Inc., or any competitor of Providence Title, Inc., within specified Texas counties, pending the resolution of this case.[1] Plaintiff-Appellee/Cross-Appellant Providence

---

* This opinion is not designated for publication. See 5th Cir. R. 47.5.

[1] *See* 28 U.S.C. § 1292(a)(1) (authorizing appeals from interlocutory orders granting injunctions).

No. 21-40578

Title, Inc., seeks affirmance of the district court's entry of a preliminary injunction, but cross-appeals to seek an expansion of the scope of the injunction and  a "correction" of the district court's determination of the effective date of the parties' noncompetition agreement.  Finding no abuse of discretion in the district court's rulings, we AFFIRM the district court's July 1, 2021 preliminary injunction order.

## I.

Providence Title, Inc. provides title services in various parts of Texas, including Dallas/Fort Worth, Houston, and San Antonio. Prior to terminating her employment by Providence on February 3, 2021, Tracie Fleming served as Providence's President and a member of its Advisory Committee. Providence's Advisory Committee is a committee of shareholders charged with the management of its business and affairs, including determination of ownership compensation. It has complete control over matters normally reserved for directors and shareholders. (Shareholders' Agreement, Art. 3).[2] Before Fleming became Providence's President, she was its Chief Operating Officer. Fleming's employment at Providence commenced in 2008.[3]

Providence operates only in Texas. Truly, a competing title company operating in multiple states, expanded its business into Texas in 2019. Providence and Truly engaged in acquisition negotiations throughout 2019 before ultimately deciding to cease negotiations. Thereafter, in December 2020, Fleming, unbeknownst to Providence, entered into an employment agreement with Truly. After resigning her employment at Providence on

---

[2] Providence does not have a board of directors.

[3] Fleming's submissions indicate that her work in Texas' title insurance business began in 1998.

No. 21-40578

February 3, 2021, Fleming began work for Truly on February 4, 2021. In the roughly two months between Fleming's agreeing to work for Truly and her actual departure from Providence, twenty additional employees, including Fleming's husband, Mark Fleming, left Providence for Truly.

Fleming appeals the district court's July 1, 2021 preliminary injunction order. Referencing the noncompetition provision included in the First Amendment to Providence's Shareholders' Agreement, the order enjoins her from "maintaining employment in any capacity with Truly Title, Inc., or with any other competitor of Providence Title, Inc., within the Texas counties of Tarrant, Dallas, Harris, Bexar, or any Texas counties contiguous to those counties pending the resolution of this case."

Article 8 of Providence's Shareholders' Agreement addresses purchases and sales of Providence stock. The First Amendment to Providence's Shareholders' Agreement added Sections 8.3 and 8.4 to Article 8.[4] The noncompetition provision, set forth in Section 8.4, provides as follows:

> Non-Compete. Offering Shareholder agrees for a period of twenty-four (24) months from the date of the Closing (defined in Section 8.1) he/she will not (i) serve as a partner, employee, consultant, officer, director, member, manager, agent, associate, investor, or otherwise, or (ii) directly or indirectly, own, purchase, organize or take preparatory steps for the organization of, or (iii) build, design, finance, acquire, lease, operate, manage, invest in, work or consult for or otherwise affiliate hisself [sic]/herself with, any business in competition with or otherwise similar to Providence's business within the Texas counties of Tarrant, Dallas, Harris, Bexar or any Texas counties contiguous to such stated counties. Breach of this covenant shall entitle the payees of the promissory notes given in payment for the Shares

---

[4] Providence's Shareholders' Agreement became effective on June 1, 2010. The First Amendment to Providence's Shareholders' Agreement, which Fleming and the other Providence shareholders signed, became effective on April 9, 2013.

acquired under Section 8.2 herein to defer all payments for a period not to exceed twenty-four (24) months, without interest.

## II.

We review an order granting a preliminary injunction for an abuse of discretion. *Atchafalaya Basinkeeper v. U.S. Army Corps of Eng'rs*, 894 F.3d 692, 695–96 (5th Cir. 2018); *Google, Inc. v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016). "The district court abuses its discretion if it relies on clearly erroneous factual findings in deciding whether to grant a preliminary injunction or relies on 'erroneous conclusions of law.'" *Atchafalaya Basinkeeper*, 894 F.3d at 696. The district court's findings of fact are reviewed for clear error. *Google*, 822 F.3d at 220. The district court's legal determination are reviewed de novo. *Id*.

A preliminary injunction is an "'extraordinary and drastic remedy.'" *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). To issue such relief, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council,* 555 U.S. 7, 24  (2008) (quoting *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987)). And only when the movant has "clearly carried the burden of persuasion" should a court grant preliminary injunctive relief. *Anderson*, 556 F.3d at 360.

To obtain a preliminary injunction, a movant must establish the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Google*, 822 F.3d at 220; *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). If the movant fails to establish any one of

No. 21-40578

these factors, the movant cannot obtain injunctive relief. *See Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (explaining that a preliminary injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements" (quoting *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)).

Under Texas law, the elements of a breach of contract claim are (1) a valid contract, (2) performance, (3) breach, and (4) damages resulting from the breach. *Myan Mgmt. Grp., L.L.C. v. Adam Sparks Fam. Revoc. Tr.*, 292 S.W.3d 750, 754 (Tex. App.—Dallas 2009, no pet.). In this matter, Providence claims that Fleming has breached her noncompetition agreement. For a "covenant not to compete" to be enforceable under Texas law, section 15.50(a) of the Texas Business and Commerce Code requires that it:

(1) be ancillary to or part of an otherwise enforceable agreement;

(2) contain reasonable limitations as to time, geographical area, and scope of activity to be restrained; and

(3) not impose a greater restraint than necessary to protect the goodwill or other business interest of the promisee.

*See* Tex. Bus. & Com. Code Ann. § 15.50(a).

### III.

Arguing that the district court's preliminary injunction should be vacated, Fleming maintains that the prerequisites for its entry have not been satisfied. She alternatively argues that the injunction is overbroad. Cross-appealing, Providence contends that the scope of the preliminary injunction should be expanded to prohibit Fleming from any employment by Truly, or any other competitor operating in one of the counties covered by the noncompetition agreement, regardless of Fleming's physical work location.

5

No. 21-40578

Providence also seeks a "correction" of the district court's order to reflect that Fleming's noncompetition provision became effective immediately upon her February 3, 2021 resignation, rather than the "date of the Closing" that the parties have determined to be May 24, 2021.

Fleming's Appeal

Our review of the July 1, 2021 preliminary injunction order begins with the district court's determination that Providence has established a substantial likelihood of success on the merits of its breach of contract claim against Fleming. Arguing that the district court erred in this assessment, Fleming maintains that the noncompetition provision in Section 8.4 of Providence's Shareholders' Agreement does not satisfy the requirements of section 15.50(a) of the Texas Business and Commerce Code and, thus, is legally unenforceable. *See* TEX. BUS. & COM. CODE ANN. § 15.50(a).

Regarding § 15.50(a)'s first requirement—that the noncompetition covenant "be ancillary to or part of an otherwise enforceable agreement"— Fleming contends that Providence has not shown (1) that the consideration given by Providence in the "otherwise enforceable agreement," i.e., the Providence Shareholders' Agreement, is reasonably related to an "interest worthy of protection" by a noncompetition covenant; and (2) that the noncompetition covenant was "designed to enforce [Fleming]'s return consideration or return promise(s)" in Providence's Shareholders' Agreement.[5] Our review of the record in this matter, however, reveals that

---

[5] *See Marsh USA Inc. v. Cook,* 354 S.W.3d 764, 773–78 (Tex. 2011); *Titan Oil & Gas Consultants, LLC v. Willis*, 614 S.W.3d 261, 267 (Tex. App.—Texarkana 2020, pet. denied); *Neurodiagnostic Tex., LLC v. Pierce*, 506 S.W.3d 153, 163–66 (Tex. App.—Tyler 2016). Goodwill, trade secrets, specialized training, and other confidential or proprietary information are protectable business interests. *Marsh,* 354 S.W.3d at 774; *Neurodiagnostic Tex.*, 506 S.W.3d at 164.

Fleming did not timely make these arguments in the district court.[6]  And, generally, arguments not raised in the district court are forfeited on appeal. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("We do not ordinarily consider issues that are forfeited because they are raised for the first time on appeal).

Of course, challenges to subject matter jurisdiction are excepted from this rule because they concern the court's power to hear a case. *Rollins*, 8 F.4th at 398.  We also have discretion to consider an issue first raised on appeal if it involves a "pure question of law" and our refusal to consider it "would result in a miscarriage of justice." *Id.* Circumstances satisfying these requirements, however, are rare.

A "pure question of law" is one that does not require consideration of documents or other factual evidence in the record; instead, it can be decided simply by examining a statute or case. *See Rollins*, 8 F.4th at 399 ("[w]hether Rollins would have been able to establish a fact dispute [precluding summary judgment] is plainly not a pure question of law"); *Colony Ins. Co. v. Wright*, 16 F.4th 1186, 1191–92 (5th Cir. 2021) (Costa, J., concurring) ("Once we start dissecting the record, we find ourselves exactly where the forfeiture rule says we should not be—deciding issues based on inadequately developed facts."). Furthermore, this discretion is not controlled by mere inclination, bias, or sympathy. *Rollins*, 8 F.4th at 398.  Instead, it is determined by reasoned "judgment guided by sound legal principles." *See Colony*, 16 F.4th at 1191 (Costa, J., concurring); *Rollins*, 8 F.4th at 398–99 ("We must be on guard for the risk of judicial bias" and "see no principled basis for addressing

---

[6] Although Fleming's opposition to Providence's motion for preliminary injunction did contest the noncompetition provision's enforceability, her arguments to the district court focused solely on the provision's clarity and scope (relative to geographic breadth and types of employment/activities).

Rollins's forfeited issue here."); *id.* ("nothing preventing Rollins from alleging a fact dispute in the district court"). Nor is forfeiture excused simply because the other party bears the burden of proof. *Garcia v. Orta*, 47 F.4th 343, 349 (5th Cir. 2022); *id.* ("District court judges, as well as the judges on this court, depend on the arguments presented by the parties in making decisions[.]").

Fleming's new enforceability challenges clearly do not present pure questions of law. And our refusal to consider them will not result in a miscarriage of justice. Fleming had ample opportunity to present these arguments prior to the district court's July 1, 2021 ruling on Providence's February 23, 2021 motion for preliminary injunction,[7] but did not,[8] and has not provided a valid excuse or justification for that omission. Furthermore, the injunction on appeal is preliminary, not permanent. Thus, on remand, she can still present these arguments, at the appropriate juncture, to the district court. For all these reasons, we decline to consider these arguments.

Turning to Fleming's next argument, she maintains, as she did in the district court, that section 15.50(a)'s second and third requirements—that the noncompetition provision "contain reasonable limitations as to time, geographical area, and scope of activity to be restrained" and not "impose a greater restraint than necessary to protect the goodwill or other business

---

[7] Indeed, Fleming submitted four missives to the district court prior to the July 1, 2021 ruling, and had the opportunity to present evidence and argument during the hearing held on April 7, 8, and 20, 2021.

[8] "Raising an issue" sufficiently to preserve it for appeal requires that it be presented such that "the opposing party and the court [are] on notice that the issue is being raised." *Garcia*, 47 F.4th at 349 (quoting *Kelly v. Foti*, 77 F.3d 819, 823 (5th Cir. 1996)). Although Fleming's July 22, 2021 motion for reconsideration included the assertion that the noncompetition provision in Section 8.4 was not "designed to enforce her return consideration or return promise(s)," the district court declined to consider the motion, concluding that it lacked authorization to do so because, by then, this appeal was pending.

interest of the promisee"—are not met. To support this assertion, she argues the provision is unreasonably vague, prohibits her from working for a competing or similar business in *any* capacity (including as an at-will employee, a receptionist, or a bookkeeper), and applies to 26 Texas counties. Additionally, though protesting the propriety of any restriction on her ability to work in Texas' title services industry, she alternatively maintains that the provision's application, if any, should be limited to precluding her from owning a competing title company in Johnson County, where she previously opened offices for Providence and interacted directly with clients.

Rejecting Fleming's assertions regarding these requirements, the district court explained that "[t]he permissible breadth of the geographic applicability of a noncompete provision depends both on the nature of the business and the degree of the employee's involvement in the business." (citing *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 335 (Tex. App.—Dallas 2014, pet. denied). Thus, "when an employee is involved in the higher levels of company management, greater geographic restrictions are often justified because the employee's knowledge of and experience with the company extend beyond the location where she worked." We agree. And, given Providence's identification of the designated counties as those in which it conducts operations and that Fleming, as Providence's President and/or Chief Operating Officer, had overseen for a number of years, we find no error in the district court's treatment of Fleming's position.

In addition to challenging the district court's assessment of the likelihood of Providence's success on the merits of its breach of contract claim, Fleming also argues that the district court abused its discretion in evaluating the other preliminary injunction requirements, *viz.*, a substantial threat of irreparable injury to Providence; threatened injury to Providence that outweighs threatened harm to Fleming; and that the preliminary

injunction would not disserve the public interest. On the instant record, we disagree.

Given Fleming's previous positions and roles at Providence, her acceptance of employment with Truly, a direct competitor—as its Executive Vice President and regional manager in one of the same large metropolitan areas in which Providence also operates—is sufficient to establish a substantial threat of irreparable injury to Providence, i.e., loss of goodwill, reputation, continuity of operations, and competitive advantage, that outweighs the threatened harm to Fleming. This is particularly true on the instant record given that approximately twenty other former Providence employees (with whom Fleming had worked and/or supervised) accepted employment with Truly just after Fleming did. Indeed, it is alleged that Fleming was personally involved in these employees being hired away.

Finally, as noted by the district court, it is not as if Fleming was not aware of the existence of the noncompetition agreement in the First Amendment of Providence's Shareholders' Agreement. Furthermore, she is not barred from working in the title industry in *every* county of Texas, and the term is only two years.

Providence's Cross-Appeal

On cross-appeal, Providence urges this court to "correct" the district court's determination that Fleming's noncompetition provision became effective on the "date of the Closing," which the parties have agreed is May 24, 2021, rather than immediately upon her February 3, 2021 resignation from Providence. In seeking this relief, Providence essentially asks that we "re-write"—in its favor—a seemingly unambiguous contractual provision that it drafted (with the assistance of counsel). We will not. Although Providence apparently has decided, in hindsight, that the selected language is unfavorable to it, and its dissatisfaction is understandable, neither point

justifies disregarding the plain language of the contract. *See* Shareholders' Agreement, § 8.4 ("Offering Shareholder agrees for a period of twenty-four (24) months from the date of the Closing (defined in Section 8.1.) that he/she will not [compete]"). Nor does interpreting the provision as the district court did yield an "absurd" result. Regrettable perhaps, for Providence, but not absurd.

Lastly, Providence also argues that, given the nature and location of its business operations, and Fleming's previous roles with the company, the scope of the preliminary injunction should be expanded to prohibit Fleming from any employment by Truly, or any other competitor operating in one of the counties covered by the noncompetition agreement, regardless of Fleming's physical work location. Considering the numerous technological tools currently available to today's workforce, there is some logic to this argument. However, given the applicable abuse of discretion standard of review, the absence of a more developed record on this issue (including, but not limited to, Fleming's current role and any protections that have been employed by Truly to guard against any such violations), and Providence's ability to seek modification of the current injunction on remand, by means of a properly supported motion, we decline to alter the district court's order.

## IV.

Having carefully considered the parties' briefs, applicable law, and the record in this matter, particularly including the district court's July 1, 2001 "Memorandum Order and Opinion," we are not convinced, on the showing made, that the district court abused its discretion in ruling on Providence's motion for preliminary injunction. Accordingly, we AFFIRM the district court's July 1, 2021 preliminary injunction order.